IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MAURICE LAMONT DYER, <br><br> Defendant. | Criminal Action No. 3:13-CR-229-1 |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on a Motion to Identify Confidential Informant and Produce for Suppression Hearing (ECF No. 30) ("Motion") by Defendant Maurice Lamont Dyer ("Dyer" or "Defendant"). For the reasons stated below, the Court will DENY Dyer's Motion.

I. **BACKGROUND**[1]

In 2012, members of the Hanover County Sheriff's Office, in cooperation with the Henrico Police Department, began an investigation into the drug trafficking activities of two individuals, later identified as Walter West and Tyrone Nelson. Both West and Nelson have been charged in a heroin trafficking conspiracy, along with Dyer.[2]

Between November 2012 and August 2013, a series of seven separate purchases of heroin were made directly from West by law enforcement utilizing a confidential informant. In August 2013, law enforcement officers learned that, for approximately a seven to eight month period of time leading up to the arrest of Nelson and West, the two had been pooling their money together to purchase heroin for redistribution to their customers. Law enforcement officers subsequently

---

[1] Defendant has proffered a different version of the facts that will be highlighted in corresponding footnotes.

[2] Defendant alleges that "Nelson was squeezed to 'give up' or identify Dyer" and that there was a related *quid pro quo* arrangement. (Def.'s Reply Mot. to Suppress 2). Defendant further contends that West has no connection to Dyer and knows absolutely nothing about Dyer.

1

learned that the heroin source of supply was an individual who went by the names "Reese" and/or "Mo" and who dealt directly with Nelson.

On the date of Defendant's arrest, a description of the individual known as "Reese" or "Mo" was provided to law enforcement by a cooperating witness ("CI"). The CI also provided a description of the vehicles the supplier drove and the area where the supplier lived. An agent, who was familiar with Dyer, thought that the description that had been provided by the CI regarding the source of supply may in fact be Dyer. A picture of Dyer was obtained and shown to the CI with all identifiers removed. The CI confirmed that the person in the picture was in fact the heroin source of supply.

On August 22, 2013, a series of telephone calls were placed to Dyer. At the time, Dyer's phone number was listed in the CI's telephone under the name "Re." Prior to placing the recorded telephone call, the CI advised that he was comfortable ordering three ounces of heroin at one time from Dyer. The CI then contacted Dyer and left a message on Dyer's telephone. Dyer returned the call shortly thereafter and the two had a conversation in which the CI informed Dyer that he was looking for "three hours of studio time." (Gov't Opp'n Mot. to Suppress 2). The CI explained that he and Dyer used coded language to discuss their drug business and further explained that when he requested "3 hours of studio time" he was in fact ordering three ounces of heroin.[3] Dyer agreed to deliver the "studio time" to a predetermined location.

While arrangements were being made to purchase heroin from Dyer, law enforcement officers simultaneously set up surveillance units in the vicinity of Dyer's residence, identified as 8032 Arbor Glen Place, Henrico, Virginia ("Home"). After the order was placed, Dyer was observed driving to the Home in a black Lincoln SUV bearing West Virginia license plates. Dyer entered and exited the Home and then opened the back of a white van. He then got back into the black SUV, where he sat for a few minutes before returning briefly to the white van. Eventually,

---

[3] Defendant contends, on information and belief that the confidential informant had no knowledge of or any nexus to Dyer at all before August 22, 2013, or at any time thereafter.

Dyer got back into the Lincoln SUV, pulled out of the driveway, and drove away from his Home. Dyer traveled directly to the predetermined meeting location to meet the CI.

### A. Automobile Stop, Search, and Seizure at Pine Lake Drive

Henrico County Police surveillance units followed Dyer both in the air and on the ground. They watched him as he drove directly to the meeting location—Pine Lake Drive. Upon arriving at the location, Dyer was positively identified by the CI as the heroin supplier he had called earlier. Law enforcement officers approached Dyer's vehicle and detained Dyer ("Pine Lake Drive Stop"). Hanover Sherriff's Investigator Stem searched the driver's compartment of Dyer's Lincoln SUV, where he recovered a Chipotle Restaurant napkin secured with a rubber band. Inside the napkin was a plastic Ziploc bag with approximately three ounces of suspected heroin inside it. Dyer was arrested and, in a search incident to arrest, law enforcement officers recovered $26,889 in United States currency. Dyer was brought to the police department, where he was read his rights pursuant to *Miranda* by Drug Enforcement Administration Task Force Officer Keith Parknow. Dyer stated that he understood his rights and agreed to speak with law enforcement. Dyer stated that he had gone to the location where he had been arrested to discuss the music business. Dyer advised that he is a promoter and that his co-defendant, Tyrone Nelson, is a rap artist.

### B. The Search Warrant for Dyer's Home

After Dyer was arrested, members of the Henrico County Police Department drafted an affidavit in support of a search warrant for the Home. The search warrant requested authorization for law enforcement to search the Home, the curtilage, and any and all vehicles and outbuildings on the property. During the time that law enforcement officers were preparing the search warrant, surveillance units were stationed in front of Dyer's Home.

The Hanover Sheriff's Office, with assistance from members of the Drug Enforcement Administration, assisted in executing the search warrant. During the search, large quantities of United States currency were found throughout the Home: $49,775 was found hidden in the

closet in the master bedroom; $19,975 was found wrapped in a plastic bag and hidden inside a hamper in the master bedroom; $15,000 was found in another plastic bag in the hamper; $14,800 was found in the pocket of a pair of jeans located inside a box in the closet; and $23,000 was found in a 2013 Jaguar XJL, with $5,000 of that money in the center console, and $18,000 was found in the trunk tire well wrapped in a red plastic bag.

Investigator Stem called Officer Parknow, who was still speaking with Dyer. He asked for the combination to a safe that was found hidden in the attic. Dyer stated that he had forgotten about the safe and did not know the combination. When asked if there was anything inside the safe, Dyer stated that he had money in it. Dyer ultimately remembered the combination, and $165,170 in United States currency was recovered. A handgun was also recovered from the master bedroom closet among Dyer's clothing and bags of money. Dyer is a convicted felon, and his wife, who was on the scene during the execution of the search warrant, denied ownership of the firearm.

**C. The Search Warrant for the Two Vans**:

Two vans that were parked in front of the Home were towed to a secure impound lot. Although the search warrant authorized a search of all vehicles on the property, the vehicles were towed for purposes of asset forfeiture, and separate search warrants were secured the following day for these vehicles. The first vehicle, a 2011 GMC Savannah conversion van ("GMC Van"), bearing VA license WSR-4335, was registered to Dyer and fit the description of the van from which Dyer had previously supplied heroin. The second vehicle, a 2007 Chevrolet van ("Chevrolet Van") bearing VA license TX86231, was the white van that Dyer had been observed entering into, and exiting from, just prior to delivering the three ounces of heroin. (*See* Gov't Opp'n Mot. to Suppress Ex. 2). In executing the search warrant for the GMC Van, which was registered to Dyer, law enforcement officers located rubber bands in the driver's door panel and on a knob to the left of the steering column. They were consistent in appearance with the rubber bands that were found inside Dyer's Lincoln SUV; that were found on the three ounces of heroin

4

Dyer was delivering; and that were used to band together the United States currency that was recovered throughout Dyer's residence. Wrapped in a black plastic bag found inside the center console was $15,000 in cash. Documents were found and recovered from the driver's side sun visor. A silver North Face jacket was found in the rear cargo area, and in the left jacket pocket was $35,000 in cash. In the center console detectives also found a business card for "Magic Mobile Detailing." Contact information on the card indicated that customers should call "Moe," one of the names that had been provided by the CI witness used by the heroin supplier.

In the Chevrolet Van, detectives found a bag containing rubber bands that were of the same brand name and packaging as the rubber bands that were found in the GMC Savannah van. There were also rubber bands placed around a knob on the left steering column, which was in the same location as the ones found in the GMC Van, and the Lincoln SUV that Dyer had driven to the Pine Lake Drive address. Additionally, in the center console, detectives observed numerous Chipotle Restaurant napkins, which was the same brand of napkin Dyer had used to wrap up the heroin that he brought to Pine Lake Drive. Also in the center console was a screwdriver that matched the set of screwdrivers that had been observed in the garage of the Home during the execution of the search warrant. In the center console Detectives also found $21,290 wrapped in a plastic bag that was identical in appearance to the bag that was found in the GMC Van that had $15,000 inside of it. A blue Rubbermaid tote was located between the driver's and passenger's seats. This tote contained drug packaging materials, such as plastic Ziploc bags. In the rear cargo area was a black chair, a large black duffel bag, and a larger plastic tote. All items within this tote were directly related to the distribution of controlled substances. Significantly, an additional quantity of heroin was found inside a knotted plastic bag. This heroin was consistent in appearance with the heroin Dyer had delivered to the Pine Lake Drive address. Other items, such as digital scales, were also recovered from inside the van. Although the van had been registered in someone else's name, documents inside the van clearly showed that it belonged to Dyer. For example, a small engine repair work order for a red Craftsman

riding mower was found in the name of Dyer with an address of 8032 Arbor Glen Place. In addition, there was a receipt from Lowes which documented the purchase of a riding mower for $2,984 (paid for in cash) on April 7, 2013. This riding mower was observed by law enforcement inside the shed at the Home. Law enforcement officers believed that the van had been set up for the distribution of controlled substances. There was no indication that the van had been used for any other purpose, in particular, nothing in the van suggested that it had been used in a mobile detailing business.

In all, $369,056 in United States currency, more than one hundred grams of heroin, and multiple vehicles were seized. Virginia Employment Commission records revealed that at the time of his arrest, Dyer was not reporting any income.

Dyer filed the instant Motion to Identify Confidential Informant on March 12, 2014. The Government filed its opposition on March 28, 2013. Defendant did not file a reply. A hearing on the Motion to Suppress is scheduled for May 13, 2013. A jury trial in this matter is scheduled for May 22, 2014.

## II. ANALYSIS

The Government generally enjoys a privilege under certain circumstances to withhold the name of a confidential informant. *United States v. Gray,* 47 F.3d 1359, 1364–65 (4th Cir. 1995). The purpose of this privilege "is the furtherance and protection of the public interest in effective law enforcement," and the privilege recognizes "the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Roviaro v. United States,* 353 U.S. 53, 59 (1957). However, the identity of a confidential informant must be disclosed "when the informant's identity is relevant and helpful to the defense or is essential to fundamental requirements of fairness." *Gray,* 47 F.3d at 1364. The Fourth Circuit has emphasized that "the key to reviewing a district court's failure to compel disclosure is a balancing of the competing interests in light of the particular circumstances of the case." *Id.* at

1365 (internal quotation marks omitted). "[A]n important factor affecting disclosure is the informant's involvement in the criminal acts of the accused." *Id.* Under this approach, the Government is privileged to withhold the identity of an informant when he or she was a "mere tipster" or was used only for obtaining a search warrant. *Id.* In contrast, failing to disclose the informant's identity more likely constitutes error if the informant was an "active participant in the events leading to the arrest of the accused." *Id.*

Dyer asserts that he is entitled to the identity of the CI in order to satisfy the minimum due process standards under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Dyer also argues that he is entitled to the identity of the CI because the information is necessary to allow him to independently determine if the totality of circumstances test is met regarding probable cause to effect the Pine Lake Drive Stop and issue the subsequent warrants.

Here, the Government is permitted to withhold the identity of the CI who was used as a tipster and for the limited purposes of obtaining search warrants. *See United States v. Robinson*, No. 1:10CR423-1, 2011 WL 1549416, at *5-6 (M.D.N.C. Apr. 21, 2011), *aff'd,* 471 F. App'x 118 (4th Cir. 2012) (denying a motion to identify where a confidential informant had no connection to the criminal act with which a defendant was charged and the informant was used solely to obtain a search warrant); *United States v. Solomon*, No. 1:11CR32-1, 2011 WL 1704721, at *18-19 (M.D.N.C. May 4, 2011), *aff'd,* 480 F. App'x 732 (4th Cir. 2012) (denying a motion to identify where a confidential informant merely executed a controlled purchase had no connection to any of the criminal acts with which the defendant had actually been charged and the defendant had not been charged in connection with the controlled purchase itself).

The Court finds that, while the CI was involved in identifying Dyer and setting up the meeting at Pine Lake Drive, he is not being used as an active participant in any of the criminal offenses charged to Dyer. Among other things, testimony by law enforcement officers and the evidence obtained in the Pine Lake Drive Stop, the Home, and two vans are the basis for the

current criminal charges against Dyer. For the purposes of the impending suppression hearing, evidence of the heroin and firearm found during the multiple searches is not based upon the credibility of the CI or upon any statements made by the CI. Rather, law enforcement officers will testify as to their own observations of the Pine Lake Drive Stop and to the evidence they later found while searching Dyer's vehicle. *See Solomon*, 2011 WL 1704721, at *19. Similarly, law enforcement officers will testify as to the evidence found at Dyer's home and in the two vans found near his home. *Id.* Additionally, Dyer has not met his burden of demonstrating how the *Roviaro* balancing test supports his Motion.

### III.  CONCLUSION

For the reasons stated above, the Court will DENY Dyer's Motion.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this \_\_\_6th\_\_\_ day of May 2014.